**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| PAMELA LEWIS, | Case No. 2:15-cv-01368-RFB-PAL |
| Plaintiff, | |
| v. | **ORDER** |
| | **Findings of Fact and Conclusions of Law After Court Trial** |
| CASA DI AMORE LLC; JEFF SCHWARTZ, individually and dba CASA DI AMORE, LLC; MICHAEL CAMPAGNO, individually and dba CASA DI AMORE; DOES 1-100; ROE ENTITIES 1-100, | |
| Defendants. | |

## I.      INTRODUCTION

This case involves a dispute over unpaid wage claims after Plaintiff Pamela Lewis ("Lewis") resigned from employment as a limousine driver with Defendant Casa di Amore ("Casa di Amore" or "the restaurant"). After the Department of Labor ("DOL") conducted an investigation of Casa di Amore's employment practices and determined that limousine drivers were employees rather than independent contractors, Casa di Amore paid five current and former limousine drivers back pay as set forth in a settlement agreement with the DOL. Lewis received payment of back wages as part of the settlement agreement between the DOL and Casa di Amore; however, she argues that she has unresolved wage claims pursuant to Nevada law and the Fair Labor Standards Act ("FLSA").

## II.     BACKGROUND

Lewis filed a Complaint on July 17, 2015, alleging violations of the FLSA and Nevada Revised Statute ("NRS") Chapter 608, as well as retaliation under the FLSA. Defendants moved for Judgment on the Pleadings on June 20, 2016. The Court granted the motion as to the FLSA retaliation claim, and denied the motion as to the unpaid wage claims pursuant to FLSA and Nevada law.

The Court held a bench trial on June 6, 2017, June 7, 2017, June 14, 2017, July 28, 2017 and January 12, 2018, and took the matter under submission. In light of recently decided law, the Court also ordered the parties to submit briefings on the issue of whether an agreement between the parties, as well as a calculation of the number of hours worked and the rate of pay for those hours, are required for an employee to exercise her private right of action for unpaid wages under NRS Chapter 608.

## III.    JURISDICTION AND VENUE

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Venue is proper because the underlying actions and corresponding damages occurred within Clark County, Nevada.

## IV.     FINDINGS OF FACT

Federal Rule of Civil Procedure 52(a)(1) requires the Court to "find the facts specially and state its conclusions of law separately" in a bench trial. Fed. R. Civ. P. 52(a)(1). Factual findings must be sufficient to indicate the basis for the Court's ultimate conclusion. Unt v. Aerospace Corp., 765 F.2d 1440, 1444-45 (9th Cir. 1985) (citing Kelley v. Everglades Drainage Dist., 319 U.S. 415, 422 (1943)). The findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." United States v. Alpine Land & Reservoir Co., 697 F.2d 851, 856 (9th Cir. 1983), cert. denied, 464 U.S. 863 (1983) (citations and quotation marks omitted).

Accordingly, the Court makes the following findings of fact on this matter.

1. Casa di Amore is a business entity which is an Italian restaurant located at 2850 East Tropicana Avenue, Las Vegas Nevada 89121. The restaurant's hours are 5:00pm to 5:00am, and it is open every day of the week except Tuesdays. The restaurant offers complimentary limousine transportation to and from hotels on the Las Vegas Strip for patrons of the establishment.

2. Jeff Schwartz ("Schwartz") is the owner of the restaurant. At all times relevant to this suit, Schwartz exercised control over the terms of the employment relationship and payment of the limousine drivers.

3. Michael Campagno ("Campagno") is a general manager at Casa di Amore. At all times relevant to this suit, Campagno directly supervised the limousine drivers and he also controlled the employment relationship and payment of the limousine drivers.

4. Lewis was formerly a limousine driver employed by Casa di Amore from approximately January 2013 to approximately early June 2014. At the time Lewis was hired, she was informed that she would be paid only in tips, and would receive no hourly wage or salary. She additionally was permitted to have a free meal from the restaurant during each shift.

5. The amount of tips was not set and Lewis could receive varying amounts of tips each week.

6. While Lewis was an employee, there were three to five limousine drivers employed by the restaurant. There were twelve total shifts each week for the drivers.

7. Drivers were required to come in early to check the vehicles prior to their first pickup of the day. These vehicle checks typically included making sure that the interior of the limousine was clean and free of trash, and rolling down the windows of the vehicle to cool its temperature down on hot summer days. Drivers commonly checked under the hood of the limousine to make sure fluid levels were sufficient, and informed the management if there were any problems with the vehicle's function.

8. The limousines were owned by Casa di Amore, the insurance and registration were paid for by and in the name of Casa di Amore, and drivers were reimbursed by Casa di Amore for gasoline. While the drivers had input into their schedules, the shift schedules for drivers

and the responsibilities of the drivers were determined by Casa di Amore management, including Campagno, who supervised the limousine drivers.

9. The drivers' schedules tended to be consistent; they knew which days of the week they were to report to work. However, the time of the first pickup could fluctuate, depending on whether customers called to reserve limousine service. The earliest pickup of the day was 4:45pm, and the latest pickup was 10:00pm. Drivers were responsible for dropping off the patrons that they picked up, regardless of how late those patrons stayed at the restaurant. When drivers arrived for their shift, they received a sheet of paper that contained the name and telephone number of the patron requesting service, the patron's location, and the time of the dinner reservation.

10. Patrons would routinely stay at the restaurant until midnight or later on weekend nights, and Lewis was expected to return those patrons to their hotels if she picked them up for dinner.

11. Lewis worked five days a week from approximately 4:30pm to 12:30am. She worked approximately 2.5 hours of overtime each week. She worked a total of 59 weeks.

12. During the time Lewis was an employee, the management staff at Casa di Amore, including Campagno and non-party Smith Mgallie ("Mgallie"), were aware that she was working at least 40 hours each week and 2.5 hours of overtime each week.

13. At some point in 2014, Campagno and Mgallie held a meeting with all of the limousine drivers requesting that the drivers sign an independent contractor agreement. Lewis was employed with Casa di Amore when this meeting occurred. Lewis asked for time to review the agreement before signing, to which Campagno agreed.

14. The management staff at Casa di Amore encouraged drivers to sign the independent contractor agreement to avoid paying the drivers hourly wages and overtime pay.

15. Shortly after the meeting, Lewis resigned from Casa di Amore.

16. After Lewis resigned, she contacted the Department of Labor about Casa di Amore's employment practices, specifically the payment of limousine drivers. The DOL conducted an investigation that covered limousine drivers' work performed from late 2012 through

late 2014.

17. As part of its investigation, the DOL examined Casa di Amore's books and records, and interviewed employees and managers including Lewis and Campagno. The DOL concluded that limousine drivers were employees and not independent contractors.

18. On February 3, 2015, the DOL and Casa di Amore entered into an Installment Settlement Agreement ("Settlement Agreement") which required Casa di Amore to pay back wages to five limousine drivers, in a total amount of $37,308.50. Pursuant to the Settlement Agreement, the drivers received varying amounts of back pay. Lewis was one of the drivers entitled to back wages, in the amount of $9,091.50. Casa di Amore was permitted to pay the drivers the back pay owed in installments.

19. On July 4, 2015, Lewis wrote a letter to Casa di Amore demanding a lump sum payment of $9,139.70 in back hourly wages.

20. Lewis did not receive a lump sum payment. However, Lewis received and cashed several checks issued by Casa di Amore in response to the DOL settlement. Lewis received in total $4,931.44 for unpaid wages from Casa Di Amore.

21. It cannot reasonably be determined how the DOL arrived at the calculation of Lewis' back pay. Neither Campagno nor Schwartz objected to the DOL's calculations or inquired into how those calculations were made.

22. Lewis did not sign a WH-58 waiver form or otherwise indicate to Casa di Amore that she was waiving her right to bring suit for unpaid wage claims.

23. Lewis did not participate in the drafting of the Settlement Agreement, and did not sign or otherwise indicate agreement with the terms of the Settlement Agreement.

24. Lewis accepted the checks in the belief that they represented a portion of what she was owed, but did not accept the checks under the belief that she was settling all of her unpaid wage or overtime claims.

## V.    CONCLUSIONS OF LAW

### A.  Unpaid Back Wages Owed Pursuant to Nevada Revised Statute § 608.040

### *1. Legal Standard*

The Nevada Supreme Court has recently clarified that employees in the state have a private right of action to assert unpaid wage claims. See Neville v. Eighth Jud. Dist. Ct. in and for Cty of Clark, 406 P.3d 499, 500 (Nev. 2017) ("We conclude that the Legislature intended to create a private cause of action for unpaid wages pursuant to NRS [§] 608.140. It would be absurd to think that the Legislature intended a private cause of action to obtain attorney fees for an unpaid wages suit but no private cause of action to bring the suit itself.") (citation omitted). An "employee" is defined by NRS § 608.010 as any person "in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed." An "employer" is one who "ha[s] control or custody of any employment, place of employment or any employee." NRS § 608.011. Although individuals and business entities may be held liable under Nevada law for violations of wage claims, individual managers cannot be held personally liable as "employers" as defined by NRS § 608. Boucher v. Shaw, 196 P.3d 959, 963 (Nev. 2008). In Nevada, "wages" is defined as "1. The amount which an employer agrees to pay an employee for the time the employee has worked, computed in proportion to time; and 2. Commissions owed the employee . . . ." NRS § 608.012. The Nevada minimum wage in 2014 was $8.25. NRS § 608.060 provides for payment of overtime wages in the amount of 1.5 times the regular wage rate when an employee works more than 40 hours in a workweek.

NRS § 608.040 provides:
1. If an employer fails to pay: (a) Within 3 days after the wages or compensation of a discharged employee becomes due; or (b) On the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid or for 30 days, whichever is less.

2. Any employee who secretes or absents himself or herself to avoid payment of his or her wages or compensation, or refuses to accept them when fully tendered to him or her, is not entitled to receive the payment thereof for the time he or she secretes or absents himself or herself to avoid payment.

"Whenever [an] . . . employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment, and shall establish by decision of the court or verdict of the jury that the amount for which he or she has brought suit is justly due, and that a

demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit." NRS § 608.140.

## 2. *Discussion*

As the Nevada Supreme Court has only recently clarified the private right of action for NRS Chapter 608, the Court is unaware of any precedential cases substantively analyzing such suits specifically in the context of NRS § 608.040 claims. However, the Court finds that Lewis is entitled to back wages under Nevada law. Lewis was an employee of Casa di Amore, as she was in the restaurant's service for the entire period of her employment. Certain Defendants were her employer, as they exercised control over Lewis and over the place and terms of her employment. Although Casa di Amore and Lewis did not have an agreement to pay Lewis hourly wages at the time she resigned, the Court finds that the parties did have an agreement that Lewis was to appear for work as a limo driver at scheduled times, and Lewis had an expectation to be compensated for the work she performed. Regardless of the initial arrangement that Lewis would be paid in tips, the Court interprets Nevada law such that an employee could not, as a matter of public policy, agree to work without being paid at least the minimum hourly wage established by the state. Lewis was not paid minimum wage for her work as a driver for Casa Di Amore.

Therefore, the Court finds that Defendants Casa Di Amore and Schwartz are liable for Lewis' unpaid wages, including the pay due to her at the time she resigned as well as hourly pay for a period of 30 days after her resignation. Because Lewis submitted a written demand for unpaid wages not greater than the amount due, the Court further finds that she is entitled to attorneys' fees and costs under NRS § 608.140. Pursuant to NRS § 99.040(1)(d), when there is no contract establishing an interest rate, a plaintiff is entitled to interest "[u]pon wages or salary, if it is unpaid when due, after demand therefor [sic] has been made." Therefore, Lewis is also entitled to interest on her unpaid wages under state law, as set forth below.

The Court additionally finds that Defendants did not prove that Lewis intentionally failed to provide her complete mailing address, including apartment number, to Casa di Amore. The

Court finds that the evidence presented that the address on file with the Department of Labor did not include an apartment number is irrelevant to Casa di Amore's own recordkeeping and storage of employee contact information. Therefore, the Court does not find that Lewis hid from Defendants to avoid payment as defined by NRS § 608.040.

The Court finds that Casa di Amore and Schwartz meet the definition of "employer" under state law and therefore only these Defendants are jointly and severally liable for Lewis' unpaid hourly and overtime wages under Nevada law. The Court finds that Campagno cannot be held liable under Nevada law in his capacity as an individual manager. Boucher, 196 P.3d at 963.

### B. Unpaid Overtime Claim under the Fair Labor Standards Act

#### 1. *Legal Standards*

To establish an unpaid overtime claim under the FLSA, a plaintiff must establish that she was a covered employee that worked over 40 hours in a workweek, without getting paid for those overtime hours. Landers v. Quality Commc'ns, Inc., 771 F.3d 638, 644 (9th Cir. 2014), as amended (Jan. 26, 2015). An "employee" is defined in part under the FLSA as "any individual employed by an employer." 27 U.S.C. § 203(e)(1). The FLSA provides that an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The FLSA broadly defines an "employer" as an individual that "exercises 'control over the nature and structure of the employment relationship'" or that maintains 'economic control' over the relationship . . . ." Boucher v. Shaw, 572 F.3d 1087, 1091 (9th Cir. 2009) (citation omitted).

Under the FLSA, the minimum wage is $7.25. 29 U.S.C. § 206(a). An employee that works more than 40 hours in a workweek is entitled to one and one half the minimum wage rate for each extra hour worked. 29 U.S.C. § 207(a). 29 U.S.C. § 216(b) provides damages to employees for violations of § 207 "in the amount of [the employee's] . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." "Courts have the discretion to deny an award of liquidated damages if the employer shows that it acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that its conduct did not violate the FLSA." Chao v. A-One Med. Servs., 346 F.3d 908, 920 (citing 29 U.S.C. § 260)). The Court is authorized to also

award attorneys' fees and costs. Id. However, an award of interest is not permitted when a plaintiff recovers liquidated damages, as "allow[ing] an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation." Holtville Alfalfa Mills v. R. R., 230 F.2d 398, 401 (9th Cir. 1955) (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 (1945)) (quotation marks omitted).

Even if a plaintiff establishes that she is entitled to unpaid hourly or overtime wages under the FLSA, it is possible for those wage claims to be waived. 29 U.S.C. § 216(c) provides in relevant part: "The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages." A valid waiver is established where "the employee agree[s] to accept the amount tendered by the employer, and . . . the employee receive[s] payment in full of that amount." Dent v. Cox Commc'ns, 502 F.3d 1141, 1146 (9th Cir. 2007) In Dent, the plaintiff signed a WH-58 form waiving his right to sue for unpaid wages for work he performed between April 28, 2002 and October 11, 2003, but filed suit claiming unpaid overtime wages for work performed prior to April 28, 2002. 502 F.3d at 1142-43. The Ninth Circuit held that plaintiff's signed WH-58 form did not cover his wage claims for work performed outside of the period specified in the form. Id. at 1143.

Pursuant to the FLSA, an employer may be liable for willful violations of the statute. "A violation of the FLSA is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" Chao, 346 F.3d at 918 (9th Cir. 2003) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). If a court finds that an employer willfully violated FLSA, the statute of limitations extends an additional year, from two years to three years. Id. (citing 29 U.S.C. § 255(a)).

### 2. *Discussion*

The Court first finds that Lewis has established a right to unpaid overtime wages under the

FLSA. At the time she worked for Casa di Amore, she met the definition of an "employee," as she was hired by and worked on the behalf of Defendants. All Defendants meet the statutory definition of "employer" as all controlled the nature and scope of Lewis' employment. During all of the 59 weeks that Plaintiff was employed by Casa di Amore, she worked at least 40 hours per week. In addition, she also worked 2.5 hours overtime every week. Therefore, the Court finds that Lewis is entitled to unpaid overtime pay under the FLSA. The Court further finds that Defendants did not have an objectively reasonable basis for believing that their conduct did not violate FLSA and thus awards liquidated damages to Lewis in an amount equal to the overtime wages due to her.

The Court does not find that Lewis waived her FLSA claim. In this case, there is no signed WH-58 form and Lewis did not agree to accept the settlement payments in lieu of being able to bring suit, so the Court finds no waiver of unpaid overtime wages, liquidated damages, or attorneys' fees and costs. The Court also does not find that Lewis' acceptance of checks issued to her indicates agreement with the terms of the Installment Settlement Agreement, and therefore her acceptance does not constitute waiver of all unpaid wage and overtime claims, pursuant to 29 U.S.C. § 216(c).

The Court also does not find that the DOL investigation and subsequent determination of the amount of unpaid wages due to Lewis encompassed the full period of Lewis' employment, including overtime hours. In fact, it is not possible to reasonably determine the accuracy of the amount of unpaid back wages the DOL determined were owed to Lewis due to the actions of the Defendants. The restaurant did not maintain accurate records of its drivers' hours. Based upon the evidence adduced at trial, the Court found Lewis' schedule to be that which was noted earlier in this Order. See generally, McLaughlin v. Ho Fat Seto, 850 F.2d 586, 589 (9th Cir. 1988) ("Where an employer failed to maintain accurate payroll records an employee carries his burden under the FLSA if he shows he performed work for which he was improperly compensated and produces some evidence to show the amount and extent of that work 'as a matter of just and reasonable inference' . . . . The burden is not on the employee[ ] to prove the precise extent of uncompensated work.") (citation omitted). Lewis' testimony was sufficient to establish that she performed work

for which she was improperly compensated, permitting the Court to determine the schedule set forth above.

The Court also finds that Defendants' conduct was willful. As above, the Court finds that Defendants knew or should have known the drivers were working the same weekly hours as traditional employees. The Court also finds that Campagno and Mgallie wanted the drivers to sign the independent contractor agreements to avoid paying hourly and overtime wages. The Court finds that encouragement was done for the benefit of Schwartz and Casa di Amore. At minimum, Defendants showed reckless disregard for whether they would be liable for FLSA violations. Therefore, the Court finds that Defendants willfully violated FLSA. However, as Lewis brought her claims within two years of the alleged violations, no extension of the statute of limitations is necessary.

All Defendants engaged in the actions of an employer. Both Schwartz and Campagno exercised control over Lewis' employment. The Court further finds that Casa di Amore is liable for Lewis' unpaid overtime wages under FLSA; the restaurant meets the statutory definition of "employer" under both the FLSA, and Schwartz and Campagno acted on behalf of the restaurant and for its benefit.

Importantly, as noted below, although the Court finds that Lewis has established her entitlement to overtime pay under the FLSA, she will only be awarded the liquidated damages portion of her claim as the actual unpaid overtime pay will be fully recouped under the Nevada wage claims. Lewis is not permitted to receive double recovery for overtime pay from both her state and federal claim.

### C. Punitive Damages

As the Court stated during trial, punitive damages are not available in this case. The FLSA does not provide for punitive damages, and Lewis is being awarded liquidated damages. The Court also finds that Lewis did not adequately plead punitive damages pursuant to state law in her Complaint.

### D. Post-Trial Motions

Lewis filed Motions to Strike and a Motion for Sanctions regarding Defendant's Response

to her Post-Trial Brief. (ECF Nos. 78, 80, 81). The Court denies these motion, and finds that sanctions are unwarranted and that the documents attached by Defendants were included in the Court's Exhibit List.

## VI.    JUDGMENT

### A.  Unpaid Hourly Wages

The Court finds that Defendants Casa di Amore and Schwartz are liable to Lewis for unpaid wages under Nevada law, in the amount of $21,543.55.[1]  As the Court finds that Lewis not entitled to double recovery after having received payment for some of these wages pursuant to the DOL Settlement payments made by Defendants, this amount must be offset by the $4,931.44.  Thus, the total amount of outstanding unpaid wages owed to Lewis under Nevada law is $16,612.11.

### B.  Unpaid Overtime Pay Under the FLSA

The Court finds that all Defendants are liable to Lewis for unpaid FLSA overtime compensation, in the amount of $1,599.36.[2]  However, the Court again finds that Plaintiff is not entitled to double recovery of overtime wages under Nevada law and FLSA.  Therefore, the Court finds that Defendants are <u>only</u> liable to Lewis for an amount of liquidated damages equal to the amount of unpaid overtime wages which is $1,599.36.

### C.  Punitive Damages

As stated above, the Court finds no basis for the award of punitive damages.

### D.  Attorneys' Fees and Costs

---

[1] The Court arrived at this calculation by multiplying the number (59) of weeks Lewis was covered under the FLSA by 40 hours each week, and multiplying that figure (2360) by the 2014 Nevada minimum wage ($8.25). Lewis was owed $19,470, plus an additional 30 days' pay of $247.50. At the time of her resignation, Lewis was also owed the 2014 Nevada overtime wage ($12.38) for the amount of weeks she worked (59), multiplied by the average number of overtime hours she worked each week (2.5), for a total of $1,826.05.

[2] The Court arrived at this calculation by multiplying the number of weeks Lewis was covered under the FLSA (59), by the average overtime hours Lewis worked (2.5), and multiplying that figure by the overtime wage ($10.88).

The Court awards attorneys' fees and costs to Lewis pursuant to FLSA and NRS § 608.140. While Lewis is not entitled to double recovery, she is entitled to the maximum award under either federal or state law.

### E.  Prejudgment Interest

The Court awards prejudgment interest to Lewis pursuant to NRS § 99.040. Interest is due from the time Lewis submitted her written demand for back wages, July 4, 2015, to the date of entry of judgment.

Lewis is directed to submit a Motion for Attorneys' Fees,  and Costs, and Interest with underlying documentation, within 30 days of the date of this Order.

The Clerk of Court is instructed to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: this <u>23rd</u> day of August, 2018.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**